UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

RANDY MCCRAY

                  Plaintiff,

      -against-

NEW YORK CITY POLICE DEPARTMENT,
HOWARD SAFIR, POLICE COMMISSIONER,
MICHAEL SCAGNELLI, JOSEPH FOX,
HARRY J. WEDIN, ETHEL H. CORCORAN,
Individually and in their official capacities,

                  Defendants.

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**

CV-99-7035 (CBA)(LB)

----------------------------------------------------------X
AMON, UNITED STATES DISTRICT JUDGE

      Plaintiff Randy McCray has filed suit pursuant to Title VII of the Civil Rights Act of 1964, amended and codified at 42 U.S.C. § 2000e, *et. seq.*, and 42 U.S.C. § 1983, for violation of equal protection, claiming that he was drug tested, suspended, and terminated from the New York City Police Department (NYPD)[1] as a result of racial discrimination.[2] The Court has

---

[1]The plaintiff has incorrectly sued the NYPD. As an agency of the City of New York, the NYPD cannot be sued independently. Lauro v. Chase, 219 F.3d 202, 205 n.2 (2d Cir. 2000); Davis v. Lynbrook Police Dep't, 224 F.Supp.2d 463, 477 (E.D.N.Y. 2002); Bailey v. New York City Police Dep't, 910 F.Supp.116, 117 (E.D.N.Y. 1996); N.Y.C. Charter, Ch. 17, § 396. The Court will address the merits of the claim as if McCray sued the proper party, the City of New York.

[2]McCray also asserts a "hostile work environment" claim. This claim is barred because it was not alleged in his EEOC complaint and is not "reasonably related" thereto. McCray incorrectly relies on Deravin v. Kerik, 335 F.3d 195, 202 (2d Cir. 2003), to argue that his "hostile work environment" claim was implicit in his EEOC complaint and therefore should not be barred. Although in that case the court held that a claim of racial discrimination was "reasonably related" to an EEOC complaint regarding national origin discrimination, McCray's

1

already granted summary judgment with respect to Title VII claims brought against the individual defendants. The defendants have filed a motion for summary judgment regarding the remaining claims on the basis that the plaintiff has failed to put forth evidence to make out a *prima facie* case of discrimination. For the reasons set forth below, defendants' motion is granted.[3]

**I. Background**

Randy McCray began working as a police officer for the NYPD in January of 1982. (Pl.'s Aff. at 1.) On May 26, 1995, McCray's girlfriend, Alana Mitchell, reported to the NYPD that on May 24, McCray had assaulted her, threatened her with his gun, and had been using cocaine. (Pl.'s Aff. at 1.) On May 27, as a result of Mitchell's report, the police picked up McCray, interviewed him, took away his gun, ID card, and shield, and told him to report to police headquarters on May 29 to receive a new ID and a modified assignment. (Pl.'s Aff. at 1.)

---

"hostile work environment" claim is not reasonably related to or implicit in his EEOC complaint regarding his drug testing, suspension, and termination. "In determining whether claims are reasonably related, the focus should be on the factual allegations made in the (EEOC) charge itself, describing the discriminatory conduct about which a plaintiff is grieving." Id. at 202 (internal quotations omitted). McCray's complaints regarding his drug test, suspension, and termination, do not appear to form an adequate basis for a hostile work environment claim, which requires repeated conduct and the plaintiff to show that "the workplace [wa]s permeated with discriminatory intimidation, ridicule, and insult." Patterson v. County of Oneida, 375 F.3d 206, 227 (2d Cir. 2004) (internal quotations omitted) (alteration in original); see also National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002). Accordingly, his hostile work environment claim is not reasonably related to his EEOC complaint and is therefore barred.

[3]At oral argument, plaintiff complained that his opportunity to take discovery in this case was inadequate. To the extent that this constitutes an application for further discovery, it is denied. The original discovery deadline in this case was November 8, 2001. Discovery nevertheless extended until late 2006, and plaintiff had every opportunity to make whatever relevant requests he cared to. The defendants complied with plaintiff's discovery demands for almost six years–in a case in which discovery should have taken a small fraction of that time. Accordingly, plaintiff's request for additional discovery is denied.

On May 28, the NYPD called McCray and told him to come to the precinct immediately to be arrested for menacing and harassing Mitchell. (Pl.'s Aff. at 1-2.) McCray was arrested when he arrived and later voluntarily submitted to a drug test. (Pl.'s Aff. at 2.) He was suspended before the test results were known. (Pl.'s Aff. at 2.) McCray tested positive for cocaine. (Ex. B at 69.)[4] On June 2, 1995, McCray was administratively charged by the NYPD with possessing and ingesting cocaine, and menacing, harassing, and striking Mitchell. (Ex. J.) On July 8, 1996, McCray was tried on these charges in an administrative hearing before NYPD Trial Commissioner Ethel H. Corcoran. (Ex. J.) Corcoran found McCray guilty on all charges and recommended his termination. (Ex. J.) Police Commissioner Howard Safir adopted Corcoran's recommendation, and McCray was terminated on February 27, 1997. (Ex. J.)

On March 22, 1996, prior to McCray's trial, he filed a complaint with the Equal Employment Opportunity Center (EEOC) alleging that he was treated differently on account of race when he was drug tested on the basis of Mitchell's allegations and suspended before the test results were known. (Pl. Aff. 1-3.) After investigating the allegations and concluding that the information obtained did not establish a violation of the statutes, the EEOC issued McCray a right-to-sue letter on August 4, 1999. (Ex. A.) McCray timely filed a pro se complaint on October 28, 1999, commencing this action. He retained counsel on October 30, 2006.

**II. Discussion**

    **A. Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to

---

[4]Exhibits labeled by letter can be found as attachments to defendants' Rule 56.1 statement.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999). The Court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The court is required to view the evidence in the light most favorable to the nonmoving party, see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Nevertheless, the non-moving party cannot rest on "mere allegations or denials" but must instead "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Nat'l Westminster Bank USA v. Ross, 676 F. Supp. 48, 51 (S.D.N.Y. 1987) ("Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact."). No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

**B. McCray's Claims Fail as a Matter of Law**

McCray's claims that his drug testing, suspension, and termination violated Title VII and § 1983, fail as a matter of law.[5] Title VII claims are analyzed under a three-step burden-shifting

---

[5]McCray also claims that NYPD Trial Commissioner Corcoran should have recused herself from his administrative trial because she was also serving as the supervisor of a unit that handles EEOC complaints. He claims that her failure to recuse herself was a result of racial discrimination. (Pl.'s Am. Compl. at 4.) This claim is factually inaccurate. Corcoran was not assigned to the unit that responds to EEOC complaints until September 1997 – more than six months after McCray's trial and termination. (Ex. I at 2.) Accordingly, this claim is dismissed.

4

analysis. First, the plaintiff must establish a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he was performing satisfactorily; (3) he was subjected to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Shumway v. United Parcel Service, Inc., 118 F.3d 60, 63 (2d Cir. 1997). Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. McDonnell Douglas Corp., 411 U.S. at 802-803 (1973). Once the defendant does so, the burden shifts back to the plaintiff to demonstrate that the employer's stated reason was merely a pretext. Id. at 804.

Additionally, under Section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004) (citing West v. Atkins, 487 U.S. 42, 48 (1988)). Where a Section 1983 claim is based on equal protection, the "violation of a right" element is analyzed under the exact same framework as a Title VII claim—namely the McDonnell Douglas three step approach. Id. Accordingly, the following analysis applies to both McCray's Title VII and Section 1983 claims.

McCray fails to establish a *prima facie* case of discrimination. While he satisfies the first and third prongs of the test – as an African-American he belongs to a protected class, and his drug testing, suspension, and termination constitute adverse employment actions – McCray has not demonstrated that his performance was satisfactory or that the circumstances surrounding the adverse employment actions give rise to an inference of discrimination. The adverse employment

5

actions to which McCray was subjected were based on unsatisfactory performance. McCray was drug tested and suspended because Mitchell reported that he was abusive and was using cocaine.[6] (Ex. G.) He was terminated because he tested positive for cocaine[7] and, at his administrative trial, NYPD Trial Commissioner Corcoran found him guilty of ingesting and possessing cocaine, as well as menacing and harassing Ms. Mitchell. (Ex. J.)[8] Clearly criminal activity such as drug use and domestic abuse constitute unsatisfactory performance for a law enforcement officer.

Moreover, even if one were to somehow conclude that McCray has established his *prima facie* case under McDonnell Douglas, the state has clearly offered a legitimate, non-

---

[6] The NYPD bureau supervisor is authorized to mandate drug testing and suspension when there is a "reasonable suspicion" that an officer is using drugs. (Ex. 4 [numbered exhibits can be found as attachments to plaintiff's memorandum in opposition to summary judgment].) A reasonable suspicion "exists when evidence or information which appears reliable is known to the police supervisor and is of such weight and persuasiveness as to make the supervisor, based upon his . . . judgment and experience, reasonably suspect that [the officer] is illegally using drugs." (Ex. 4.) Mitchell's allegations, investigated by a police sergeant, a police captain, and the assistant District Attorney of the Brooklyn District Attorney's Office (ex. G), were sufficient grounds to require McCray to submit to the drug test and to suspend him. (Pl.'s Aff. at 2; Ex. B at 60.)

[7] One of McCray's two eleventh-hour complaints regarding discovery is that he was not given an adequate chance to determine why he tested positive for cocaine, a result which he maintains was false (he suggests that his sample was intentionally doctored). First, McCray had six years to pursue such a discovery request. Second, even if McCray's drug test did result in a false positive, this does not prove that his termination was animated by race. McCray had a twelve-day departmental trial, at which he was represented by counsel. He has not contended that he did not receive Due Process. At that trial, he failed to adequately rebut either his accuser's accusations or the test results, and was therefore subsequently terminated. Accordingly, the Commissioner's decision to terminate him reasonably stems from the result of his fair departmental trial, at which his drug test survived the crucible of meaningful adversarial testing.

[8] "The commissioner shall have power . . . on conviction by the commissioner, or by any court or officer of competent jurisdiction, of a member of the force of any criminal offense, or neglect of duty, violation of rules . . . or any conduct injurious to the public peace or welfare, or immoral conduct or conduct unbecoming an officer, or any breach of discipline, to punish the offending party by . . . dismissal from the force." NYC Code, § 14-115(a).

discriminatory reason for the adverse employment action–he tested positive for cocaine and was reported for menacing and harassing Mitchell, and was dismissed after a fair hearing on these issues. Thus, even if he did meet his *prima facie* burden, McCray has not met his burden at the third step of the analysis by demonstrating that these legitimate, non-discriminatory reasons for his dismissal were pretextual.

McCray alleges that he would have been "given a little more consideration" if he was white. (Pl.'s Aff. at 2.) Other than this mere allegation, he puts forth no evidence to show the existence of circumstances that give rise to an inference of discrimination. Though McCray argues that the notation of his race on police reports concerning his indictment gives rise to an inference of discrimination (Pl.'s Am. Compl.), he also admits that race is always listed in police reports, including those he filled out while serving as an officer. (Ex. B at 40-41.)

The only other evidence McCray puts forth to substantiate his discrimination claim are the names of three white police officers that he alleges tested positive for cocaine but were not terminated, and a number of newspaper articles discussing the over-representation of minorities in NYPD terminations. These allegations do not suggest circumstances that give rise to an inference of discrimination. The three white officers that McCray alleges tested positive for cocaine but were not terminated are Peter Montella, Thomas Kennedy, and Sal Damese. (Ex. C, Pl.'s letter to defense counsel, Aug. 2, 2005.) Contrary to this assertion, police records show that Montella was found guilty and terminated, and that Kennedy was found not guilty. (Ex. E, Montella's Police Record; Ex. F, Kennedy's Police Record.) The NYPD does not have any record of an officer

named Sal Damese.[9]  (Ex. D.)

The newspaper articles that discuss the general over-representation of minorities and possible discrimination in NYPD terminations (Ex. 1) do not suggest that McCray was discriminated against.  While statistics can give rise to an inference of discrimination, "their usefulness depends on all of the surrounding facts and circumstances."  International Bhd. of Teamsters v. U.S., 431 U.S. 324, 340 (1977).  McCray's drug test, suspension, and termination were based on allegations and evidence of cocaine use and domestic abuse.  Records of the Police Department contradict his allegations that white officers suspected of drug use were given more favorable treatment.  Accordingly, newspaper articles which present statistics suggesting the possibility of disparate impact discrimination are not sufficient to give rise to an inference of discrimination in McCray's case.[10]  Because McCray does not show circumstances that give rise to an inference of discrimination, he fails to make out his *prima facie* case.  McCray's claims rest on mere allegations and conclusory assertions and therefore cannot stand.

---

[9]McCray's second eleventh-hour discovery complaint is that he was unable to obtain adequate records of similarly situated officers and their treatment.  To this end, he asserted at oral argument that he was in possession of a videotape segment from a local cable news show about Officer Damese.  This videotape was not mentioned in McCray's briefs, nor had defense counsel heard of it prior to argument.  Moreover, McCray's counsel had not seen the tape herself.  In any event, McCray has not been able to suggest an alternate spelling of the last name of the individual in question for the NYPD to investigate, nor has he convincingly explained how the case of this mysterious "Mr. Damese" would tend to suggest disparate treatment here.  McCray merely indicates that Mr. Damese took a drug test resulting in a false positive, not that his case was treated differently because of his race.

[10] McCray additionally questions other allegedly improper aspects of his trial and termination, such as the drug test's legitimacy and Mitchell's credibility.  However, he simply asserts that these things were improper without giving any evidence to support the assertion or show that discrimination was involved.

**III. Conclusion**

For the reasons set forth herein, the defendants' motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment in accordance with this Order and to close the case.

SO ORDERED

Dated: Brooklyn, New York
       January 24, 2008

                                      Carol Bagley Amon
                                      United States District Judge